UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID WALLACE HREHA,

                Petitioner,

v.

MATT MACAULEY,

                Respondent.

_____/

Case No. 1:19-cv-881

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

David Wallace Hreha (sometimes referred to as "Hreha" or "petitioner"), through counsel, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds set forth in Hreha's petition are without merit or not cognizable on federal habeas review.  For the reasons discussed below, I recommend that the petition be denied.

    **I.**        **Background**

    **A.**        **Trial, conviction and sentence**

A jury convicted Hreha of three counts of second-degree criminal sexual conduct (CSC 2) M.C.L. § 750.520c(1)(a), and two counts of first-degree criminal sexual conduct (CSC 1) M.C.L. § 750.520b(1)(a).  *People v. Hreha*, No. 324389, 2016 WL 1612751 at *1 (Mich. App. April 21, 2016).  "The victims of defendant's criminal sexual conduct were KH, WE, and MJ." *Id*. "These boys, each under the age of 13, were neighbors to defendant and often worked for defendant by cleaning his yard." *Id*.  The Court sentenced Hreha to 50 to100 years for the CSC 1 convictions

and 19-60 years for the CSC 2 convictions, as enhanced by Michigan's fourth offense habitual offender statute, M.C.L. § 769.12.  *See* Judgment of Sentence (Sept. 29, 2014) (ECF No. 6-18, PageID.1922-1923).

### B.   State court appeal and post-judgment motion

Hreha filed a direct appeal which consisted of issues raised by his counsel, Mr. Strauss, and issues raised by Hreha in a pro se Standard 4 brief.  After his unsuccessful appeal, Hreha filed a motion for relief from judgment in the trial court.  This too was unsuccessful.

Hreha's appellate counsel raised five claims on appeal:

I.      Was Mr. Hreha denied his Sixth Amendment right to confrontation and his due process rights to a fair trial and to present a defense where the trial court refused to permit him to introduce evidence to show an alternative source for [WE's] sexual knowledge?

II.      Did the trial court err in permitting Jennifer Weber to testify with regard to what [MJ] allegedly said in the car on the way to Walmart in violation of Mr. Hreha's right to a fair trial?

III.     Did the trial court err by ruling that [MJ] was unavailable under MRE 804(a)(3) and that the preliminary exam transcript could be admitted and read to the jury?

IV.     Did Barbara Welke's expert testimony violate Mr. Hreha's due process to a fair trial?

V.      Did the cumulative effect of the errors in this case deprive Mr. Hreha of his federal and state due process rights under US CONST AMS V, VI, XIV and CONST 1963, Art 1, §§ 17, 20?

*Hreha*, No. 324389 (Appellate Brief) (ECF No. 6-18, PageID.1978).

Hreha filed a Standard 4 Brief, raising two issues in his "Statement of Question Presented" (in his words):

I.      Was Mr. Hreha denied his Sixth Amendment right to confrontation and his due process rights to a fair trial and to present a defence where the trial court refused to permit him to introduce evidance to show a direct reversal of [KH] in Court alligations of CSC 2nd?

II.    Was Mr. Hreha denied his Sixth Amendment right to confrontation and his due process rights to a fair trial and to present evidence in defence.  The court refused him to introduce evidance that would place considerable doubt as to [WE's] allegations of of CSC 1st?

*Id*. at PageID.2049.[1] The Michigan Court of Appeals affirmed the convictions.  *Id.* at *8.

Hreha filed a *pro se* application for leave to appeal to the Michigan Supreme Court which consisted of the seven issues raised in the appellate briefs.  The first five issues were those raised in the appellate brief prepared by his attorney, with the sixth and seventh issues being the two issues raised in his Standard 4 Brief (ECF No. 6-19, PageID.2113-2119).   The Michigan Supreme Court denied the application for leave to appeal.  *People v. Hreha*, No. 153821 (Order) (Oct. 26, 2016) (Mich.) (ECF No. 6-19, PageID.2109).

After his unsuccessful appeal, Hreha filed a *pro se* motion for relief from judgment (MRJ).  The trial court denied the MRJ, which raised the following issues:

1) that trial counsel was ineffective for failing to investigate potential witnesses who allegedly would have been favorable to him; 2) that trial counsel was ineffective for failing to present evidence which allegedly cast doubt on the reliability of the child witnesses and/or Defendant's ability to commit the assaults as described; 3) that the People committed prosecutorial misconduct by allegedly failing to disclose material evidence; 4) that trial counsel was ineffective for failing to effectively challenge the credibility of various State witnesses; and 5) that the cumulative effect of these errors would have resulted in a different jury verdict. Further, Defendant sets forth the claim that a positive blood test for Hepatitis C provides a basis for granting a new trial under the rule of newly discovered evidence. Defendant's Exhibit G itself, however, purports that Hepatitis C is transmitted through contact with infected blood and transmission through sexual contact is rare.

Order denying MRJ (April 6, 2018) (ECF No. 6-20, PageID.2385).

---

[1] The thrust of Hreha's argument in Issue I of the Standard 4 Brief was ineffective assistance of counsel (*i.e.*, "defendants [sic] trial lawyer did not introduce evidence that would create considerable doubt as to [WE's] allagations [sic] of sexual abuse".  *Id*. at PageID.2058. As discussed, *infra*, the Michigan Court of Appeals construed both issues listed in the Standard 4 Brief as claims of ineffective assistance of counsel.  *Hreha*, 2016 WL 1612751 at *7.

Hreha filed a *pro se* application for leave to appeal to the Michigan Court of Appeals which re-framed the MRJ issues as follows:

I.     Did the trial court abuse its discretion when it denied defendant's motion for relief from judgment?

II.    Did the defendant submit "good cause" and resulting "prejudice" for failure to bring these issues in prior appellate proceedings, namely ineffective assistance of appellate counsel which prevented these issues from being raised on direct appeal?

III.   Did trial counsel prove to be ineffective in the defense of Mr. Hreha:

    A.    During critical stages throughout the pretrial proceedings;

    B.    When trial counsel failed to investigate the issues in the proceedings and/or research alternative strategies in defense;

    C.    When counsel failed to object to prosecutorial misconduct where the prosecution failed to disclose impeachment evidence and was involved in manipulation of evidence;

    D. When counsel failed to object to the prosecution improperly vouching for the credibility of the witness; eliciting sympathy from the jury; bolstering the witness as well as leading the witness' testimony;

    E.    When counsel failed to adequately challenge the prosecution's expert witness?

IV.    Does defendant's claim of newly discovered evidence in the form of blood tests proving the existence of hepatitis c entitled him to relief?

V.    Does the cumulative effect of the errors during defendant's trial require that defendant be granted a new trial?

*People v. Hreha*, No. 344908 (Application for leave to appeal) (ECF No. 6-20, 2216-2217). The Michigan Court of Appeals denied the application "because defendant failed to establish that the trial court erred in denying his motion for relief from judgment." *Id.* (Order) (Dec. 20, 2018) (PageID.2208).

Hreha raised the same claims in his application for leave to appeal to the Michigan Supreme Court, which denied the application "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Hreha*, No. 158991 (order) (July 2, 2019) (Mich.) (ECF No. 6-21, PageID.2395).

### C.    Habeas claims

This matter is now before the Court on Hreha's petition seeking federal habeas review pursuant to 28 U.S.C. § 2254.  *See* Petition (ECF No. 1).  Hreha, through counsel, raised the seven issues addressed in his direct appeal:

I.    Was Mr. Hreha denied his Sixth amendment right to confrontation and his due process rights to a fair trial and to present a defense where the trial court refused to permit him to introduce evidence to show an alternative source for [WE's] sexual knowledge?

II.    Did the trial court err in permitting Jennifer Weber to testify with regard to what [MJ] allegedly said in the car on the way to Walmart in violation of Mr. Hreha's right to a fair trial?

III.    Did the trial court err by ruling that [MJ] was unavailable under MRE 804(a)(3) and that the preliminary exam transcript could be admitted and read to the jury?

IV.    Did Barbara Welke's expert testimony violate Mr. Hreha's due process to a fair trial?

V.    Was Mr. Hreha denied his Sixth Amendment right to confrontation, and his due process rights to a fair trial, and was there ineffective assistance of trial counsel whereby Mr. Hreha's attorney failed to introduce evidence that [KH] denied the allegations of CSC 2nd degree had occurred?

VI.    Was Mr. Hreha denied his Sixth Amendment right to confrontation, and his due process rights to a fair trial, and was there ineffective assistance of trial counsel whereby Mr. Hreha's attorney failed to introduce evidence of defendant's health problems, which would have cast considerable doubt as to [WE's] allegations that CSC 1st had occurred.

VII.    Did the cumulative effect of the errors in this case deprive Mr. Hreha of his federal and state due process rights under US CONST, AMS V, VI, XIV and CONST 1963, Art 1, §§ 17, 20?

Petition at PageID.12.

## II.    Standard of review

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381-82 (2000); *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state

courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). In addressing a petitioner's habeas claims, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *Sumner v. Mata*, 449 U.S. 539, 546-547 (1981).

Section 2254(d) limits the facts a court may consider on habeas review. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "[I]f the petitioner's claim was never adjudicated on the merits by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. "Instead, the petitioner's claim is reviewed *de novo* as it would be on direct appeal." *Id*.

### III.   Discussion

**A.    Issue I – Violation of the right of confrontation where Michigan's Rape Shield Law precluded Hreha from obtaining evidence from victim WE regarding previous sexual abuse**

The Michigan Court of Appeals addressed this issue as follows:

On appeal, defendant first argues that the trial court erred by excluding evidence of an incident in which WE was sexually abused by a cousin. We review a trial court's evidentiary decisions for an abuse of discretion. *People v. Unger*, 278 Mich. App 210, 216; 749 NW2d 272 (2008). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. at 217. "Preliminary questions of law, such as whether a rule of evidence, constitutional provision, or statute precludes the admission of the evidence, are reviewed de novo." *People v. Jones*, 270 Mich. App 208, 211; 714 NW2d 362 (2006).

The rape-shield statute, MCL 750.520j, is a general exclusionary rule; it bars, with two narrow exceptions, all evidence of a victim's sexual activity not incident to the alleged sexual assault. *People v. Adair*, 452 Mich. 473, 478; 550 NW2d 505 (1996). However, in limited circumstances, admission of evidence of a victim's sexual activity may nonetheless be required to preserve a defendant's constitutional rights, including the right of confrontation. *People v. Hackett*, 421 Mich. 338, 348; 365 NW2d 120 (1984). A defendant may introduce evidence of a prior incident of sexual abuse of a victim to show that the victim's age-inappropriate sexual knowledge was not learned from the defendant. *People v. Morse*, 231 Mich. App 424, 436; 586 NW2d 555 (1998). For evidence of a prior incident to be admissible, however, the facts underlying the incident must be "significantly similar" to the allegations in the present case. *Id*. at 437. If the facts of the prior incident are not "significantly similar," the exclusion of evidence regarding the prior incident does not violate a defendant's right of confrontation and right to present a defense. *People v. Duenaz*, 306 Mich. App 85, 90-93; 854 NW2d 531 (2014).

The incident between WE and his cousin did not embody all the sexual acts that WE claimed defendant committed against him. In the prior incident, the cousin penetrated WE's anus with his penis. In this case, WE testified that defendant's penis penetrated his anus, but WE also testified that defendant touched WE's penis with his hands and that defendant put WE's penis in his mouth and sucked it. The prior incident did not account for many sexual details unique to the charged conduct, so the previous incident could not fully explain the knowledge displayed by WE. *See Morse*, 231 Mich. App at 434. Additionally, WE was 11 years old at trial, and we cannot disagree with the trial court's statement that it would be speculation to conclude that WE's sexual knowledge was inappropriate for his age. *See Duenaz*, 306 Mich. App at 93. Further, defendant must show that the prior incident resulted in the conviction of another person. *Morse*, 231 Mich. App at 437. Although WE's cousin was charged in the prior incident, he was never convicted because the court dismissed the charges after finding him incompetent to stand trial. Under these circumstances, the trial court's decision to exclude evidence of the incident between WE and his cousin fell within the range of reasonable and principled outcomes.

*Hreha*, 2016 WL 1612751 at *1.

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

This Court has previously addressed the interaction between Michigan's Rape Shield Law and a criminal defendant's constitutional right to confront a witness:

The Constitution protects a defendant's right to cross-examine his accusers. *Davis v. Alaska*, 415 U.S. 3-8, 316-317 (1974). But the Confrontation Clause does not guarantee cross-examination " 'in whatever way, and to whatever extent, the defense might wish.' " *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). States may place reasonable limits on the scope of cross-examination. Clearly established federal law supports the conclusion that Michigan's Rape Shield law is just such a reasonable limit. *Batey v. Haas*, 573 F. App'x 590 (6th Cir. 2014); *Gagne v. Booker*, 680 F.3d 493 (6th Cir. 2012).

9

*Bailey v. Kowalski*, No. 2:19-cv-154, 2020 WL 4673943 at *3 (W.D. Mich. Aug. 12, 2020).

Here, the Michigan Court of Appeals held that the trial court properly excluded evidence of sexual interaction between WE and his cousin.  To prevail on this habeas claim, Hreha must show that the state appellate court's determination was contrary to, or an unreasonable application of, clearly established federal law.  Hreha has not met that standard.  As the Sixth Circuit explained in *Gagne*:

> The Michigan Court of Appeals accepted that the State has a legitimate interest under its Rape Shield Law in excluding evidence, and considered the probity of the evidence as a measure of Gagne's interest in admitting it. The United States Supreme Court has never held that rape-shield statutes do not represent a legitimate state interest, nor has it ever held that highly probative evidence will necessarily outweigh that interest. Quite to the contrary, the Court held in *Lucas*, 500 U.S. at 152–53, 111 S.Ct. 1743, that the trial court must balance the state's interest against the defendant's interest on a case-by-case basis, and neither interest is superior *per se*. And the Court concluded in *Crane*, 476 U.S. at 690, 106 S.Ct. 2142, that a trial court may even "exclude competent, reliable evidence . . . central to the defendant's claim of innocence," so long as there exists a "valid state justification." The Michigan Court of Appeals properly weighed the competing interests, as Supreme Court precedent requires, and did not misidentify or misapply any clearly established federal law.

Gagne, 680 F.3d 493 at 516, citing *Michigan v. Lucas*, 500 U.S. 145 (1991) and quoting *Major Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).   Here, the Michigan Court of Appeals properly weighed the competing interests with respect to WE's testimony.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).  Accordingly, this claim for habeas relief should be denied.

**B.**  **Issue II – Jennifer Weber's testimony regarding incriminating statements which MJ made while riding in a car**

The Michigan Court of Appeals addressed this evidentiary issue in pertinent part as follows:

> Defendant next argues that the trial court erred when it allowed MJ's mother to testify about a statement that MJ made while they were making a trip to Walmart with WE. According to defendant, evidence of MJ's statement was not admissible under MRE 803A because it was not spontaneous. . .

> " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible unless it falls within an exception to the hearsay rule. MRE 802; *People v. Gursky*, 486 Mich. 596, 606; 786 NW2d 579 (2010). MRE 803A codified the common-law "tender years" exception to the hearsay rule. *People v. Douglas*, 496 Mich. 557, 573; 852 NW2d 587 (2014). Under MRE 803A, "[a] statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided," in part, "the statement is shown to have been spontaneous and without indication of manufacture." [FN 1] "The question of spontaneity, at its essence, asks whether the statement is the creation of the child or another." *Gursky*, 486 Mich. at 613. . . .

> MJ broached the subject of sexual abuse. In response to WE's question whether he could go to defendant's house, MJ unexpectedly said that defendant was a sex offender. Although MJ's statement that defendant was a sex offender did not specifically indicate that defendant had sexually abused MJ, it implied that defendant had engaged in some type of improper sexual conduct. MJ's mother then asked MJ questions, including what he meant, how he knew that defendant was a sex offender, and whether anything happened to him. These questions were nonleading and open-ended; they did not suggest sexual abuse. In response to these questions, MJ put his head down and said no. It was only when MJ's mother asked him a second time if anything happened, after indicating that he could tell her anything and would not be in trouble, that MJ said that defendant had touched his privates. Under these circumstances, in which MJ broached the subject of sexual abuse, but then denied that anything happened with defendant until his mother asked him additional nonleading and open-ended questions, it may be considered a close question whether MJ's statement that defendant touched his privates was spontaneous. A trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion. *People v. Cameron*, 291 Mich. App 599, 608; 806 NW2d 371 (2011). Accordingly, we conclude that the trial court's decision that MJ's statement was spontaneous fell within the range of reasonable and principled outcomes and the trial court did not abuse its discretion by admitting the testimony.

> [FN 1] There are several other requirements for the admission of a hearsay statement under MRE 803A. We do not address those requirements, however,

because defendant only challenges the trial court's conclusion that MJ's statement to his mother was spontaneous.

*Hreha*, 2016 WL 1612751 at *2-3.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). Whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction  .  .  . [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  In this regard, the decision of the state courts on a state-law issue is binding on a federal court.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

The only question for this Court is whether the trial court's evidentiary ruling, which was proper under Michigan law, was so significant that it rose to the level of a federal due process violation.  "A state evidentiary ruling . . . rises to the level of a due process violation only if admitting the evidence 'so infused the trial with unfairness as to deny [the defendant] due process of law.'" *Cowans v. Bagley*, 639 F.3d 241, 248 (6th Cir. 2011) (quoting *Estelle*, 502 U.S. at 62). As a general rule, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  In short, a federal court "may only grant habeas relief on this issue if the trial court's evidentiary ruling was so egregious that it resulted in a denial of fundamental fairness."  *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006).

Here, Hreha failed to demonstrate that this evidentiary ruling rose to the level of a federal due process violation.  In this regard, Hreha addressed this issue as a matter of state law.

12

*See* Habeas Memorandum (ECF No. 1-1, PageID.56-61).[2]  Accordingly, this claim for habeas relief should be denied.

### C.    Issue III -  Did the trial court err in ruling that MJ was unavailable under MRE 804(a)(3) and that the preliminary exam transcript could be admitted and read to the jury

The applicable state rule of evidence, MRE 804(a)(3) provides that, "'Unavailability as a witness' includes situations in which the declarant . . . (3) has a lack of memory of the subject matter of the declarant's statement[.]"  The Michigan Court of Appeals found that "the trial court clearly erred by finding that MJ was unavailable as a witness" and that,

> Because MJ did not lack memory regarding the incident, we are left with a definite and firm conviction that the trial court made a mistake by finding that MJ was unavailable under MRE 804(a)(3). Consequently, the trial court abused its discretion by admitting MJ's preliminary examination testimony under MRE 804(b)(1).

*Hreha*, 2016 WL 1612751 at *4.  However, the appellate court concluded that this evidentiary error of state law was not outcome determinative:

> "[A] preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v. Lukity*, 460 Mich. 484, 495-496; 596 NW2d 607 (1999) (quotation marks omitted). MJ's testimony at the preliminary examination was cumulative of his trial testimony, except that at the preliminary examination, MJ testified that defendant's hand went into his pants and touched his penis. Regardless of whether defendant touched MJ's penis or the clothes over it, he could be convicted of second-degree criminal sexual conduct under MCL 750.520c. "Sexual contact" for purposes of MCL 750.520c "includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts. . . ." MCL 750.520a(q). Although MJ's preliminary examination testimony may have bolstered his credibility, despite containing an inconsistency, because it showed that MJ previously testified that defendant

---

[2] The Court notes that Hreha made one statement referencing a federal constitutional right, *i.e.*, "A criminal defendant's right to a fair trial derives from the Due Process Clause of the Fourteenth Amendment.  US Const, Am XIV; Const 1963, art 1, § 17."  Habeas Memorandum at PageID.56.  This statement does not transform a state evidentiary issue into a federal constitutional issue cognizable on habeas review.

touched his penis, other evidence also bolstered MJ's credibility. Specifically, MJ's mother testified that MJ told her defendant touched his privates, and the testimony of KH and WE showed defendant's propensity and character to commit the charged crime. *See* MCL 768.27a; *People v. Watkins*, 491 Mich. 450, 491-492; 818 NW2d 296 (2012). Under these circumstances, defendant has not shown that it appears more probable than not that the erroneous admission of MJ's preliminary examination testimony was outcome determinative.

*Id*.

As with the Issue II, *supra*, the state court's determination involved a state law evidentiary issue. Hreha has failed to demonstrate that this evidentiary ruling rose to the level of a federal due process violation. *See* Habeas Memorandum at PageID.61-66 (addressing the issue as a matter of state law). Accordingly, this claim for habeas relief should be denied.

### D.    Issue IV - Barbara Welke's expert testimony

Hreha contends that Ms. Welke's expert testimony violated his due process to a fair trial. The Michigan Court of Appeals addressed this issue as follows:

[D]efendant argues that error occurred when Barbara Welke, the prosecution's expert in forensic interviewing and disclosures of sexually abused children, testified that the behaviors and actions of KH, WE, and MJ during their interviews at the Children's Assessment Center (CAC) were consistent with those of sexually abused children and that it was not odd for sexually abused children to want to spend time with their abusers. We review this unpreserved claim of evidentiary error for plain error affecting defendant's substantial rights. *People v. Benton*, 294 Mich. App 191, 202; 817 NW2d 599 (2011).

In *People v. Peterson*, 450 Mich. 349; 537 NW2d 857, amended 450 Mich. 1212 (1995), our Supreme Court clarified the permissible scope of expert testimony in child sexual abuse cases. "An expert may testify regarding typical symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim or to rebut an attack on the victim's credibility." *Id*. at 373. The prosecution may present expert testimony to explain common postincident behavior of sexually abused children. *Id*. "This expert testimony, however, may be introduced only if the facts as they develop would raise a question in the minds of the jury regarding the specific behavior. The behavior must be of such a nature that it may potentially be perceived as that which would be inconsistent with a victim of child sexual abuse" *Id*. at 373 n 12. Generally, "[u]nless a defendant raises the issue of the particular child victim's postincident behavior or attacks the child's credibility, an

14

expert may not testify that the particular child victim's behavior is consistent with that of a sexually abused child." *Id*. at 373-374 (footnote omitted). "The credibility of the victim is attacked when the defendant highlights behaviors exhibited by the victim . . . and alludes that the victim is incredible because of [those] behaviors." *Id*. at 374 n 13.

Welke's testimony that the behaviors and actions of KH, WE, and MJ during their CAC interviews were consistent with those of sexually abused children constitutes plain error. *See Benton*, 294 Mich. App at 202. There is no indication that the jurors would potentially perceive the victims' behaviors during the interviews as being inconsistent with a child abuse victim. Also, defendant did not attack the victims' credibility by alluding that they were incredible because of their behaviors and actions during the interviews. Accordingly, the testimony did not fall within the permissible scope of expert testimony in a child sexual abuse case, and Welke was prohibited from testifying that the victims' behaviors and actions were consistent with those of child sexual abuse victims. *See Peterson*, 450 Mich. at 373-374.

However, this error did not affect defendant's substantial rights. *See Benton*, 294 Mich. App at 202.  Welke's improper opinion was never repeated during trial, and neither the prosecution nor defendant ever argued that the victims' behaviors at their CAC interviews rendered them credible or incredible. Further, the trial court instructed the jury that it could not consider Welke's expert testimony as an opinion regarding whether KH, WE, or MJ were telling the truth. A jury is presumed to follow its instructions. *People v. Graves*, 458 Mich. 476, 486; 581 NW2d 229 (1998). Under these circumstances, Welke's improper opinion did not affect the outcome of the proceedings. *See People v. Carines*, 460 Mich. 750, 763; 597 NW2d 130 (1999).

Welke's testimony that it was not odd for sexually abused children to want to spend time with their abusers [FN 2] was not, however, plainly erroneous. *See Benton*, 294 Mich.App at 202. KH testified, as did members of his family, that he went back to defendant's house on a regular basis after the evening of the fish dinner, which was when he alleged that defendant touched his penis. We conclude that KH's behavior of returning to defendant's house would raise a question in the minds of the jury regarding that behavior and could potentially be perceived as inconsistent with the behavior of a sexually abused child. See Peterson, 450 Mich. at 373 n 12. Because this testimony could be easily misconstrued and allow the jury to draw an incorrect inference, it was not plainly erroneous for Welke to testify that it was "not at all odd" for sexually abused children to willingly spend time with their abusers. [FN 3]

[FN 2] Welke explained that 95 percent of all child sexual abuse is committed by perpetrators known to the victims and, thus, an abuser is often someone for whom a victim has positive feelings.

15

[FN 3] Although defendant did not specifically argue that the victims' postincident behavior was inconsistent with that of sexual abuse victims, we conclude that raising such an argument was not necessary to permit this portion of Welke's testimony at trial. In *Peterson*, 450 Mich. at 358, a defendant avoided raising any questions "that would have brought into issue [the victim's] behavior that the jury would arguably consider to be inconsistent with the behavior of an abused person." Nonetheless, our Supreme Court concluded that "where there are common misperceptions regarding the behavior of the victim on which a jury may draw an incorrect inference  .  .  .  the prosecutor may present limited expert testimony dealing solely with the misperception." *Id*. at 379. Therefore, despite the fact that the defendant did not raise the issue of the particular child victim's postincident behavior or directly attack the child's credibility, the Court held that "[b]ecause the child's testimony could be easily misconstrue  .  .  .  expert testimony was proper to rebut possible inferences by the jurors." *Id*. at 379–380.

*Hreha*, 2016 WL 1612751 at *5-6.

Respondent points out that Hreha's evidentiary claim against Ms. Welke, which that court reviewed for plain error, is procedurally defaulted.  *See Lundgren v. Mitchell*,  440 F.3d 754, 765 (6th Cir. 2006) ("[A] state court's plain error analysis does not save a petitioner from procedural default.  Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits.") (citations omitted).  Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  However, federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").  Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial

economy dictates that the Court address the merits of Hreha's claims.  *See Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) (addressing the merits because "the cause-and-prejudice analysis adds nothing but complexity to the case").

In this instance, Ms. Welke testified that the behaviors and actions of KH, WE, and MJ during their interviews at the CAC were consistent with those of sexually abused children and that it was not odd for sexually abused children to want to spend time with their abusers.  As with Hreha's Issues II and III, *supra*, the state appellate court's resolution of this issue is not cognizable on federal habeas review because it involved the admissibility of evidence under state law.  Hreha failed to demonstrate that the admission of this evidence rose to the level of a federal due process violation.  *See* Habeas Memorandum at PageID.66-69 (addressing the issue as a matter of state law).[3]  Accordingly, this claim for habeas relief should be denied.

### E.    Issues V and VI raised in Hreha's Standard 4 Brief regarding ineffective assistance of counsel with respect to evidence related to KH and WE

In Issue V, Hreha contends that he was denied his Sixth Amendment right to confrontation and his due process rights to a fair trial, and that his trial counsel provided ineffective assistance by failing to introduce evidence that KH made inconsistent statements regarding the incident which resulted in the charge of CSC 2.  This issue was raised in Hreha's Standard 4 Brief. Respondent points out that this claim is procedurally defaulted because Hreha abandoned the claim on appeal.

---

[3] The Court notes that Hreha made one statement referencing a federal constitutional right, *i.e.*, "A criminal defendant's right to a fair trial derives from the Due Process Clause of the Fourteenth Amendment.  US Const, Am XIV; Const 1963, art 1, § 17."  Habeas Memorandum at PageID.66.  This statement does not transform a state evidentiary issue into a federal constitutional issue cognizable on habeas review.

As discussed, it appears that Hreha changed Issue VI, from one claiming a trial court error with respect to WE (as in the Standard 4 Brief), to one claiming ineffective assistance of counsel (as in the application for leave to appeal to the Supreme Court).  This apparent discrepancy does not affect this Court's review.  As discussed below, the Michigan Court of Appeals addressed both of these issues as raising claims of ineffective assistance of trial counsel:

In his Standard 4 brief, defendant argues that he was denied numerous constitutional rights when the trial court prohibited him from introducing evidence showing a direct contradiction of KH's allegations and evidence that would place considerable doubt on WE's allegations. Because defense counsel never attempted to introduce any of the evidence that defendant claims the trial court prohibited him from introducing, we view defendant's arguments as claims of ineffective assistance of counsel. To establish a claim of ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *People v. Uphaus* (*On Remand* ), 278 Mich. App 174, 185; 748 NW2d 899 (2008). Because defendant did not move for a new trial or an evidentiary hearing below, our review is limited to mistakes apparent on the record. *People v. Heft*, 299 Mich. App 69, 80; 829 NW2d 266 (2012).

A defendant has the burden of establishing the factual predicate for a claim of ineffective assistance of counsel. *People v. Hoag*, 460 Mich. 1, 6; 594 NW2d 57 (1999). The factual predicate of defendant's first claim is that an October 2013 case report and an April 2014 letter reported that KH denied that any touching occurred. However, our review is limited to errors apparent on the record. *Heft*, 299 Mich. App at 80. Neither the case report nor the letter referenced by defendant is included in the lower court record. Accordingly, defendant has not established the factual predicate for his claim. Additionally, defendant does not cite any authority in support of his argument, so it is unclear whether he is claiming that the October 2013 case report and the April 2014 letter should have been submitted for the truth of KH's denials or only as extrinsic evidence of prior inconsistent statements to test the credibility of KH's testimony. *See People v. Jenkins*, 450 Mich. 249, 256; 537 NW2d 828 (1995); *People v. Steele*, 283 Mich. App 472, 487; 769 NW2d 256 (2009). Because "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority," *Kelly*, 231 Mich. App at 640-641, defendant has abandoned this ineffective assistance claim.

Next, to establish a claim of ineffective assistance of counsel, a defendant must overcome the strong presumption that counsel's performance was sound trial

strategy. *People v. Dixon*, 263 Mich. App 393, 396; 688 NW2d 308 (2004). Decisions regarding what evidence to present are presumed to be matters of trial strategy. *Id*. at 398. According to defendant, he suffered from numerous physical problems, including, most pertinently, erectile dysfunction, and evidence of this physical problem would have cast doubt on WE's allegation of penetration. The prosecution filed a motion for release of defendant's medical records, which indicated that defendant had been given a prescription for erectile dysfunction. As a result of the motion, the trial court ordered that all of defendant's medical records from the Battle Creek Veteran's Hospital, including records of any prescriptions that were filled, be released to the prosecution and that any medical providers who were subpoenaed shall testify regarding defendant's medical records. It is unknown what testimony a medical provider would give regarding defendant's erectile dysfunction and filled prescriptions that may have remedied that ailment. Under these circumstances, defendant has failed to overcome the strong presumption that defense counsel's decision not to present evidence of defendant's physical problems was anything other than sound trial strategy. *See id*. at 396. Defendant was not denied the effective assistance of counsel.

*Hreha*, 2016 WL 1612751 at *7.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction.  First, the defendant must show that counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  "In this regard, the court will 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

Second, the defendant must show that counsel's deficient performance prejudiced the defense, *i.e.*, "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687.  "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693.  "Even if a [petitioner]

shows that particular errors of counsel were unreasonable, therefore, the [petitioner] must show they actually had an adverse effect on the defense." *Id*.  The appropriate test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*.  at 694.  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690.

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.  *Id.* at 689-690.  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]"  *Harrington*, 562 U.S. at 105 (internal citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

Here, the Michigan Court of Appeals properly addressed ineffective assistance of counsel with respect to both claims.  As to Issue V, which involved KH's alleged inconsistent statements made in an October 2013 case report and an April 2014 letter, the state court found that Hreha abandoned this claim.  In reaching that determination, the state court noted that Hreha failed to present any evidence that ineffective assistance of counsel occurred.  Based on this record, Hreha failed to meet his burden to demonstrate ineffective assistance of counsel.  Unsupported allegations of ineffective assistance of counsel fail to overcome the "strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  *See Fountain v. United States*,  211 F.3d 429, 435 (7th Cir. 2000) (unsupported assertions which fails to direct the court to "specific actions or omissions" to form the basis of an ineffective assistance of counsel claim "fail[] to overcome the heavy burden and presumption that his counsel was constitutionally effective").

As to Issue VI, Hreha claimed that he had erectile dysfunction, a medical condition which would cast doubt on WE's claim of physical penetration.  However, the state court properly found that Hreha failed to rebut the strong presumption that defense counsel engaged in a sound trial strategy, *e.g.*, counsel chose not to produce medical evidence of this condition, which would have included the filled prescriptions that may have remedied the condition.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).  Accordingly, these claims for habeas relief should be denied.

## G.    Issue VII – Cumulative errors

Finally, Hreha makes a cursory claim that the cumulative errors rendered his trial fundamentally unfair.  Habeas Memorandum (ECF No. 1-2, PageID.84).   Post-AEDPA, a claim of cumulative error is not cognizable on federal habeas review.   *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011).  *See also*, *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002) ("The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief.").   Accordingly, this habeas claim should be denied.

## IV.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if the Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Hreha's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id*.

I find that reasonable jurists could not conclude that this Court's dismissal of Hreha's claims would be debatable or wrong. Therefore, I recommend that the Court deny Hreha a certificate of appealability.

## V.    Recommendation

For these reasons, I respectfully recommend that the habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  November 14, 2022                                    /s/ Ray Kent
                                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).